UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ERIS EVOLUTION, LLC,

        Plaintiff,

  -against-

VINCENT BRADLEY, in his official
capacity as Chairman of the New York
State Liquor Authority,

        Defendant.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 22-CV-4616-FB-PK

*Appearances:*
*For the Plaintiff:*
JONATHAN CORBETT
Corbett Rights, P.C.
5551 Hollywood Blvd., Suite 1248
Los Angeles, California 90028

*For the Defendant:*
FRANCES POLIFIONE
NOAM LERER
Assistant Attorneys General
State of New York
28 Liberty Street
New York, New York 10005

**BLOCK, Senior District Judge:**

    Plaintiff, Eris Evolution, LLC ("Eris"), is an event venue in Williamsburg, Brooklyn, that is licensed to sell alcohol for on-premises consumption. It moves for a preliminary injunction requiring the New York State Liquor Authority ("NYSLA") to process its application for a permit to operate all night on New Year's Eve 2022 (that is, December 31, 2022 – January 1, 2023). For the following reasons, the motion is denied.

1

## I

New York law generally prohibits bars from serving alcohol between 4 a.m. and 8 a.m. Monday through Friday, and between 4 a.m. and 10 a.m. on Sunday. *See* N.Y. Alco. Bev. Cont. Law § 106(5). However, licensees may apply for a so-called "all-night permit" to remain open from 4 a.m. to 8 a.m. *See id.* § 99(1). As a matter of policy, NYSLA restricts such permits to New Year's Day. Eris applied for and obtained permits to remain open on New Year's Day 2019, 2020, and 2022; all-night permits were not issued in 2021 due to restrictions related to the Coronavirus pandemic.

Eris would like to remain open on New Year's Day 2023. However, by law, all-night permits may be issued only for "any week day." N.Y. Alco. Bev. Cont. Law § 99(1). January 1, 2023, falls on a Sunday.[1] As a result, NYSLA does not plan to issue all-night permits this year.

## II

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

---

[1] NYSLA apparently defines "week day" to include Saturday, inasmuch as all-night permits were issued for January 1, 2022, which fell on that day.

(2008). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Moreover, "the movant [is held] to a heightened standard where: (i) an injunction is mandatory, or (ii) the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation marks omitted). "When either condition is met, the movant must show a clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Id.* (citations and internal quotation marks omitted).

**A.    Likelihood of Success**

The Court concludes that Eris has failed to establish a likelihood of success on the merits. Its sole claim is that New York's ban on Sunday all-night permits violates the Establishment Clause of the First Amendment (as applied to the states through the Fourteenth Amendment). But that claim is foreclosed by a trio of Supreme Court cases decided more than sixty years ago. The lead case, *McGowan v. Maryland*, 366 U.S. 420 (1961), dealt with a Maryland law prohibiting most commercial activities on Sundays. The Court set forth a detailed history of Sunday closing laws in England, its American colonies, and the United States. It frankly

3

acknowledged "the strongly religious origin of these laws," yet noted that they "began to lose some of their totally religious flavor" even as early as the 1700s. *Id.* at 433-34. It identified a long trend of "both the federal and state governments [to orient] their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens," and found the modern Sunday closing laws had "become part and parcel of this great governmental concern wholly apart from their original purposes or connotations." *Id.* at 444-45. Thus, the Court concluded, "as presently written and administered, most of them, at least, are of a secular rather than of a religious character, and that presently they bear no relationship to establishment of religion as those words are used in the Constitution of the United States." *Id.* at 445; *see also Two Guys From Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582 (1961) (upholding Pennsylvania Sunday closing law); *Gallagher v. Crown Kosher Super Market*, 366 U.S. 617 (1961) (upholding Massachusetts Sunday closing law). Despite recent upheavals in Establishment Clause jurisprudence, *McGowan* remains good law. *See Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407, 2428 (2022) (citing *McGowan* as correctly decided based on "original meaning and history").

Eris attempts to distinguish *McGowan* but the Court is not persuaded. It is true that the law at issue in *McGowan* was a broad prohibition on commercial activity that could easily be connected to a secular purpose "to provide a uniform

4

day of rest for all citizens." 366 U.S. at 445. The law at issue in this case, by contrast, effectively limits one activity—on-premises alcohol consumption—every seven years for a period of four hours, hours when most citizens who are not asleep would likely take full advantage of the time to toast the New Year. The connection to a uniform day of rest is admittedly more tenuous.

Nevertheless, *McGowan* holds that a law with a secular purpose does not violate the Establishment Clause; it does *not* hold that providing a uniform day of rest is the only such purpose. Indeed, the Supreme Court enumerated the exceedingly broad categories of "health, safety, recreation and general well-being." 366 U.S. at 444. The only available legislative history states that the law at issue was amended in 1950 "to protect the health of the people." 1950 N.Y. Laws c. 462, at 6-7.

Eris objects that this purpose, though plainly secular, is a "sham." The Court agrees that the history of New York's ABC Law is one of ever-increasing exceptions. What began as a total prohibition on Sunday sales of alcohol became a ban on sales before noon, then before 10 a.m. Even that more limited ban doesn't fully apply on New Year's Day, unless the holiday happens to fall on a Sunday. In *People v. Abrahams*, 40 N.Y.2d 277 (1976), Judge Wachtler held for the New York Court of Appeals that the "gallimaufry of exceptions" in another of New York's Sunday closing laws had "obliterated any natural nexus between [the law] and the

5

salutory [sic] purpose of the Sabbath Laws." *Id.* at 280.  At some point, then, an irrational statute raises constitutional problems of its own.

But *Abrahams* was not an Establishment Clause case.  *See id.* at 289 (Fuchsberg, J, concurring) ("[T]he entire court is in agreement that the statute in question does not transgress the prohibition against establishment of religion[.]"). Eris must do more than show that the law is irrational; it must also show that its real purpose is to advance a particular religion or religion in general.  This it has failed to do.

**B.  Irreparable Harm**

Having found that Eris has not shown a likelihood of success on the merits, the Court need not address whether it has established irreparable harm.  Because the issue is somewhat novel, however, the Court will, as dicta, comment on its paradoxical nature.

Eris relies on a line of cases standing for the proposition that the "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Those cases deal with a particular plaintiff's claimed loss of a free exercise or free speech right.

By contrast, "Establishment Clause injuries, by their nature, can be

6

particularly elusive." *Montesa v. Schwartz*, 836 F.3d 176, 196 (2d Cir. 2016) (internal quotation marks omitted). "The unconstitutional promotion of religion often injures no particular individual any more than any other individual. That is, unlike most litigated injuries, the harm is often inherently generalized." *Id*. To address the problem, courts have formulated "three distinct theories of standing entitling an individual to pursue a claim that the Establishment Clause has been violated: (1) taxpayer, (2) direct harm, and (3) denial of benefits." *Id*. at 195.

Eris has clearly alleged direct harm in the form of revenue it would have earned but for the ban on Sunday all-night permits. *Cf. McGowan*, 366 U.S. at 430-31 ("Appellants here concededly have suffered direct economic injury, allegedly due to the imposition on them of the tenets of the Christian religion. We find that, in these circumstances, these appellants have standing to complain that the statutes are laws respecting an establishment of religion." (footnote omitted)). But that injury is economic and could presumably be remedied by monetary damages. If so, then the very injury that gives Eris standing to sue negates the extraordinary remedy of injunctive relief.

The Court has not found any cases squarely addressing this dilemma, and will leave its resolution for another day.

### III

For the foregoing reasons, Eris's motion for a preliminary injunction is

7

denied.

**SO ORDERED.**

                                                /S/ Frederic Block
                                                FREDERIC BLOCK
                                                Senior United States District Judge

Brooklyn, New York
November 8, 2022